**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELLEN RUBKE, AS TRUSTEE OF THE 1986 RUBKE LIVING TRUST, and JACK FERGUSON, individually and on behalf of all other similarly situated shareholders of Napa Community Bank,<br><br>        Plaintiffs,<br><br>   v.<br><br>CAPITOL BANCORP,<br><br>        Defendant.<br>_____/ | No. C 05-4800 PJH<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF LEAD COUNSEL** |

    Plaintiffs' motions for appointment as lead plaintiff and for approval of lead counsel came on for hearing on March 8, 2006, before this court. No opposition was filed to plaintiffs' motions. For the reasons stated on the record, the court GRANTED plaintiffs' motion for appointment as lead plaintiffs. The court, however, reserved ruling on plaintiffs' motion for approval of lead counsel, and ordered plaintiffs to supplement their papers with additional information. Plaintiffs filed supplemental declarations on March 15, 2006, and defendant filed a statement regarding the supplemental declarations on March 16, 2006. Having read the parties' papers and carefully considered the relevant legal authorities, and for the reasons stated on the record, the court GRANTS plaintiffs' motion for approval of lead counsel.

**BACKGROUND**

    This is a securities fraud class action. Plaintiffs Rubke and Ferguson, on behalf of

themselves and members of the plaintiff class, filed this action on November 23, 2005, against Capitol Bancorp Ltd. ("Capitol") and Joseph Reid, Capitol's president, CEO, and chairman of the board.  The complaint states eight causes of action, and alleges violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq., violations of the Securities Exchange Act of 1934 and rules promulgated under that act, 15 U.S.C. § 78a et seq., violations of California securities laws, a breach of fiduciary duty, and an abuse of control in breach of fiduciary duty.

The plaintiff class in this case consists of minority shareholders of Napa Community Bank ("NCB") who sold their shares to Capitol pursuant to a tender offer.  According to the plaintiffs, Capitol bases its business strategy on establishing community banks, like NCB, with the help of local investors.  The plaintiffs allege that Capitol solicited investors for NCB, primarily from Napa County, and that the solicitation included a statement that Capitol intended to make a tender offer for NCB shares within three years for 150% of NCB's book value.  Capitol and the local investors formed NCB in 2001.  During the same period, Capitol also solicited investors for First California Northern ("NCB Holdings"), a holding company whose purpose was to control Capitol's stake in NCB.  Capitol owned 51% of NCB Holdings through an intermediate subsidiary.  In turn, NCB Holdings owned 51% of NCB.

The plaintiffs allege that Capitol engaged in a concerted scheme to lower the value of NCB stock through its control of NCB.  They claim that NCB, despite its separate corporate existence, remained affiliated with Capitol, and that NCB purchased administrative services from Capitol.  The plaintiffs allege that Capitol lowered the value of NCB stock by charging NCB unfair and unreasonable fees for these services.  Capitol tendered an offer for NCB stock worth 150% of NCB's book value.  Capitol completed this offer on June 30, 2005.

The plaintiffs allege that when Capitol made its tender offer, it under-valued the NCB stock.  According to the plaintiffs, Capitol, not NCB, hired the experts who determined NCB's value, which resulted in NCB's stock being under-valued.  Minority shareholders of NCB protested this valuation, and subsequently retained their own experts to determine

1   NCB's value.  These experts valued NCB significantly higher than Capitol's experts.  In

2   addition, the plaintiffs allege that Capitol improperly diluted the minority shareholder's

3   influence over NCB, with the goal of encouraging acceptance of the tender offer.  Plaintiffs

4   also allege that Capitol misrepresented various facts when it made the tender offer.  All of

5   the plaintiffs' claims arise out of Capitol's tender offer for NCB stock.

6          On December 1, 2005, Rubke's and Ferguson's counsel posted a press release

7   notifying members of the purported plaintiff class of the suit on MarketWire.com.  On

8   January 30, 2006, Rubke and Ferguson filed the motions now before the court.  In addition,

9   George S. Trevor, one of plaintiffs' counsel, filed a declaration in support of the motions.  In

10  their motions, Rubke and Ferguson ask the court to appoint them lead plaintiff in the case

11  pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4

12  et seq.  They also ask the court to approve their choice of counsel as lead counsel.

13                          **DISCUSSION**

14  I.     Plaintiffs' Motion for Appointment as Lead Plaintiff

15         A.     Legal Standards

16                1.     Notice and Publication

17         Under the PSLRA, no later than 20 days after filing a class action securities

18  complaint, a private plaintiff or plaintiffs must publish, in a widely circulated national

19  business-oriented publication or wire service, a notice advising members of the purported

20  plaintiff class of the pendency of the action, the claims asserted, and that any member of

21  the purported class may move the court to serve as lead plaintiff.  Id. at § 78u-4(a)(3)(A)(I).

22  Not later than 90 days after the notice is published, the court shall consider any motion

23  made by a class member to serve as lead plaintiff.  Id. at § 78u-4(a)(3)(B)(I).

24         In addition, local rules apply to actions filed under the PLSRA.  The cover sheet of all

25  complaints filed under the PSLRA must contain the text "Private Securities Litigation

26  Reform Act." Civil L.R. 3-7(a).  The plaintiff must file the notice published pursuant to § 78u-

27  4(a)(3)(A)(I) with the court within 20 days after filing the complaint.  Civil L.R. 23-1(a).

28  Parties seeking to serve as lead plaintiff must file a motion to do so not later than 60 days

    after publication of the notices.  Civil L.R. 23-1(b).  Plaintiffs seeking lead plaintiff status,

                                        3

1    and their attorneys, must file certain declarations.  <u>See generally</u> Civil L.R. 3-7(b)

2    ("Certifications by Filing Party Seeking to Serve as Lead Plaintiff"); Civil L.R. 3-7(d)

3    ("Certification by Lawyers Seeking to Serve as Class Counsel").  The local rules also

4    require parties to post documents on a "Designated Internet Site."  Civil L.R. 23-2.

5                     2.     Lead Plaintiff Requirements

6          The PSLRA requires the court to appoint as lead plaintiff "the member or members

7    of the purported plaintiff class that the court determines to be most capable of adequately

8    representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(I).  The most

9    "adequate plaintiff" may be a group of plaintiffs.  <u>Id.</u> at § 78u-4(a)(3)(B)(iii)(I); <u>see e.g.</u>, <u>In re</u>

10   <u>Cavanaugh</u>, 306 F.3d 726, 732 n. 8 (9th Cir. 2002) ("a 'group of persons' can collectively

11   serve as lead plaintiff").  The act creates a rebuttable presumption that the most adequate

12   plaintiff is the person or group of persons that: I) either filed the complaint or made a motion

13   in response to the published notice; II) in the determination of the court, has the largest

14   financial interest in the relief sought; and III) otherwise satisfies the requirements of Rule 23

15   of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The PSLRA thus

16   defines the plaintiff most capable of adequately representing the interests of the class

17   members as "the one who has the greatest financial stake in the outcome of the case, so

18   long as he meets the requirements of Rule 23."  <u>Cavanaugh</u>, 306 F.3d at 729.

19         The PLSRA outlines a three step process for appointing a lead plaintiff.  <u>Id.</u>  First,

20   the pendency of the action must be publicized.  <u>Id.</u>; 15 U.S.C. § 78u-4(a)(3)(A)(I).  In the

21   next step, the court, relying on the complaint and the plaintiffs' sworn certifications, must

22   select the plaintiff who stands to gain the most financially from the lawsuit as the

23   presumptively most adequate plaintiff, choosing from the plaintiffs who either filed the

24   complaint or made a motion in response to the published notice.  <u>Cavanaugh</u>, 306 F.3d at

25   729-730; 15 U.S.C. § 78u-4(a)(3)(B)(iii).  If this plaintiff then makes a showing that they

26   meet the Rule 23(a) "typicality" and "adequacy" requirements, the court must then consider

27    this plaintiff the presumptive lead plaintiff.  <u>Cavanaugh</u>, 306 F.3d at 729-730.  At the

28   conclusion of the second step, the presumptive lead plaintiff is thus the plaintiff who has the

largest financial stake in the litigation and meets the requirements of Rule 23.  <u>Id.</u>

1    A plaintiff satisfies the "typicality" requirement if her claims or defenses "are

2   reasonably co-extensive with those of absent class members; they need not be identical."

3   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998); see Fed. R. Civ. P.

4   23(a)(3).  To fulfill the "adequacy" requirement, the lead plaintiff must demonstrate the

5   ability to fairly and adequately protect the interests of the class.  Fed. Rule Civ. P. 23(a).

6   To establish this, a plaintiff must demonstrate that they have no interests in conflict with

7   other class members and the ability, with counsel, to vigorously prosecute the action.  See

8   Hanlon, 150 F.3d at 1020.

9    In the third step of the PSLRA process, the court gives the other plaintiffs an

10   opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23.

11   Cavanaugh, 306 F.3d at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Only class members may

12   attempt to rebut the presumptive lead plaintiff's claims.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

13   This step in the analysis is adversarial, and the court must base its determination on the

14   pleadings, motions, and declarations of the plaintiffs seeking or opposing appointment of

15   the lead plaintiff.  Cavanaugh, 306 F.3d at 730.  During step three, the court, based on the

16   plaintiff's showing in step two, presumes that the presumptive lead plaintiff satisfies the

17   "typicality" and "adequacy" requirements of Rule 23(a).  Cavanaugh, 306 F.3d at 730.

18    Another plaintiff can only rebut this presumption with evidence that the presumptive

19   lead plaintiffs will not fairly and adequately protect the interests of the class or are subject

20   to unique defenses that render them incapable of adequately representing the class.  15

21   U.S.C. § 78u-4(a)(3)(B)(iii)(II).  If needed, the court may hold an evidentiary hearing to

22   make its determination.  Cavanaugh, 306 F.3d at 730.  After this process, the court shall

23   appoint as lead plaintiff the plaintiff who has the largest financial stake in the litigation and

24   has established an unrebutted satisfaction of the Rule 23 requirements.  Id. at 732.

25    If, after conducting this analysis, the court finds that the plaintiff with the greatest

26   financial interest in the litigation does not meet the requirements of Rule 23, the court

27   moves on to the plaintiff with the next greatest financial interest and begins the analysis

28   anew.  Cavanaugh, 306 F.3d at 730.  The process repeats until the court appoints a lead

plaintiff who has the greatest financial interest in the litigation and also satisfies the Rule 23

5

1    requirements.  Id.  The PSLRA requires a sequential approach; the court considers the

2    plaintiffs one at a time, in descending order of their financial interest, until it approves a lead

3    plaintiff.  See id. at 732.

4         B.    Analysis

5         At the hearing, the court noted that plaintiffs failed to follow three local rules

6    governing the PSLRA actions.  First, they omitted the text "Private Securities Litigation

7    Reform Act" from the cover sheet of their complaint.  See Civil L.R. 3-7(a).  Second, they

8    failed to timely file a copy of the published notice with the court.  See Civil L.R. 23-1(a).

9    Third, they failed to timely post documents relating to their lead plaintiff and approval of

10   counsel motion on a "Designated Internet Site" pursuant to Civil Local Rule 23-2(b)(4),

11   which required them to post all "briefs, declarations, or affidavits relating to designation of a

12   lead plaintiff."  While Rubke and Ferguson properly posted the complaint, they failed to post

13   any documents relating to the motions now before the court.  The court nevertheless

14   concluded that Rubke and Ferguson satisfied the first step of the PSLRA analysis by

15   publishing notice of the class members' claims against Capitol.

16        Plaintiffs also satisfied the second step by first showing, in the absence of any

17   opposition, that they have the largest financial stake in the litigation.  See 15 U.S.C. at §

18   78u-4(a)(3)(B)(iii).  Plaintiffs also satisfy the "typicality" and "adequacy" requirements of

19   Rule 23.

20        Rubke's and Ferguson's claims are typical of the class.  They correctly note that the

21   answers to the questions of law and fact in the case will identically affect all members of the

22   plaintiff class.  Mot. 8.  Furthermore, there is no evidence that Rubke and Ferguson have

23   unique claims or defenses that would render their individual claims atypical of those

24   of the class.

25        Rubke and Ferguson also made the requisite initial showing of "adequacy" required

26   under the second step of the PSLRA analysis.[1]  They assert that there is no antagonism or

27   _____

28   [1]However, Rubke and Ferguson incorrectly state the PSLRA "adequacy"
     requirement when arguing that they will adequately represent the plaintiff class.
     According to Rubke and Ferguson, the PSLRA requires the court to limit its
     "adequacy" inquiry to the existence of conflicts within the member class.  Mot. 8.

1   conflict of interest between them and other class members, and that they have retained

2   competent counsel to prosecute the class member claims.  Mot. 8.  The record contains

3   nothing to indicate that Rubke or Ferguson have any conflicts of interest with the member

4   class.

5       The third step of the PSLRA lead plaintiff analysis is designed to be adversarial.

6   However, because there was no opposition to rebut plaintiffs' satisfaction of Rule 23, the

7   court concluded that plaintiffs have also satisfied the third step.

8       For these reasons and those stated on the record, the court GRANTS plaintiffs'

9   motion for appointment as lead plaintiffs.

10  II.     Plaintiffs' Motion for Approval of Lead Counsel

11          A.      Legal Standards

12      The PSLRA outlines separate processes for determining a lead plaintiff's adequacy

13  and the approval of plaintiff's choice of counsel.  The choice belongs, subject to court

14  approval, to the most adequate plaintiff.  In order to make an informed decision to approve

15  the choice of counsel, the court needs sufficient information to determine whether "the

16  plaintiff's choice of counsel is irrational or tainted by self-dealing or a conflict of interest."

17  Cavanaugh, 306 F.3d at 734.

18      Under the PSLRA, the court may only approve or disapprove the lead plaintiff's

19  choice of counsel.  Cavanaugh, 306 F.3d at 734.  The court limits its inquiry to "whether the

20  lead plaintiff's choices were the result of a good faith selection and negotiation process."  In

21  re Cendant Corp. Litigation, 264 F.3d 201, 276 (3d Cir. 2001).  Typically, if there is a

22  challenge to the choice of counsel, it occurs when another plaintiff challenges the adequacy

23  of the presumptive lead plaintiff, based on the presumptive lead plaintiff's choice of counsel

24  or fee arrangement.  See e.g., Cavanaugh, 306 F.3d at 728 (district court improperly

25  appointed the lead plaintiff based on counsel's fee); Tanne v. Autobytel Inc., 226 F.R.D.

26

27  _____

28      However, nothing in the PSLRA limits the court's evaluation of the lead plaintiff's
        "adequacy" in this manner.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).
        Nonetheless, despite their reliance upon the wrong legal standard, the court
        finds that plaintiffs satisfy the adequacy requirement.

1    659, 671 (C.D. Cal. 2005) (district court rejected a claim that the lead plaintiff failed the

2    adequacy requirement on the basis of counsel chosen).

3         B.      Analysis

4         Rubke and Ferguson correctly argue that, subject to court approval, the PSLRA

5    grants the lead plaintiff the right to choose and retain counsel.  Mot. 9 (citing 15 U.S.C. §

6    78u-4(a)(3)(B)(v)).  They assert that the Law Offices of George S. Trevor has extensive

7    experience in securities and complex business litigation, and that Freidemann Goldberg,

8    LLP has expertise in business litigation and banking and corporate law.  Mot. 9-10.  In

9    support of these claims, Trevor attached brief overviews of the firms' respective businesses

10   to his declaration.  Trevor Decl. Ex. B & C.

11        However, neither plaintiffs nor Trevor submitted any information about the process

12   the plaintiffs used to select counsel and/or information regarding fee agreements.  See

13   Cendant, 264 F.3d at 276 (listing factors a court may consider in approving lead counsel).

14   At the hearing, the court noted that this information was required to ensure that Rubke's

15   and Ferguson's choices were objectively adequate.  The court advised plaintiffs that it

16   would approve their choice of counsel after they demonstrated that their choice resulted

17   from good faith selection and negotiation.  See id. at 276.

18        On March 15, 2006, Rubke and Ferguson submitted declarations demonstrating that

19   their selection of counsel was the result of good faith selection and negotiation.  Plaintiffs

20   also attached copies of their retainer agreements.  Defendant does not oppose the motion,

21   but in reply, has alerted the court to provisions of the retainer agreements that may raise

22   potential issues regarding lead plaintiffs' management and control of the litigation.  If such

23   issues arise, counsel for both parties are ordered to bring them to the court's attention

24   at that time.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons set forth above and stated on the record, the court GRANTS plaintiffs' motions for appointment as lead plaintiff and for approval of lead counsel.

IT IS SO ORDERED.

Dated: March 21, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge