1

2

3

**NOT FOR CITATION**

4

5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8

ELLEN RUBKE, AS TRUSTEE
OF THE 1986 RUBKE LIVING

9

TRUST, and JACK FERGUSON,
individually and on behalf of all

No. C 05-4800 PJH

10

other similarly situated
shareholders of Napa Community Bank,

11

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS**

12

Plaintiffs,

13

v.

14

CAPITOL BANCORP,

15

Defendant.

16

_____/

17

    Defendant Capitol Bancorp's ("Capitol") motion to dismiss plaintiffs' complaint

18

pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) came on for hearing before

19

this court on June 7, 2006.  Having read the parties' papers and carefully considered their

20

arguments and the relevant legal authorities,  the court GRANTS Capitol's motion to

21

dismiss.

22

**BACKGROUND**

23

    This is a proposed class action alleging violations of the federal securities laws.  The

24

proposed plaintiff class consists of minority shareholders of Napa Community Bank ("NCB")

25

who sold their shares to defendant Capitol Bancorp Ltd. ("Capitol") pursuant to a tender

26

offer (also referred to as an exchange offer).  The complaint states eight causes of action,

27

alleging violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq., violations of the

28

Securities Exchange Act of 1934 and rules promulgated under that act, 15 U.S.C. §

1  78a et seq., violations of California securities laws, a breach of fiduciary duty, and an abuse

2  of control in breach of fiduciary duty.  All of plaintiffs' eight claims arise out of Capitol's

3  tender offer for NCB stock.

4      Plaintiffs Rubke and Ferguson, on behalf of themselves and members of the plaintiff

5  class, filed this action on November 23, 2005, against Capitol and Joseph Reid.  Plaintiff

6  Rubke is a resident of California, and plaintiff Ferguson is a resident of Hawaii.  They were

7  both NCB common shareholders prior to and at the time of the exchange offer in this case.

8      Capitol is a Michigan corporation; and Reid is a Michigan resident.  He was the

9  chairman of the board, president, and CEO of Capitol, and signed the SEC registration

10  statement that contained the terms of the share exchange offer.

11      Capitol has founded over 30 small community banks, one of which is NCB.  It utilizes

12  a similar model with respect to all the banks.  It solicits local investors to form the new

13  bank, and tells the investors that it will always own a majority interest in the new bank,

14  thereby controlling the bank.  It also tells investors that on the bank's third anniversary, it

15  will probably offer to buy out the minority shareholders at 150% of the stock's book value.

16  It also tells the investors that there will likely be no public market for their stock in the bank.

17      In 2001, Capitol solicited investors in the Napa area to invest in NCB.  Its offer was

18  consistent with its typical business model.  *See* Offering Circular or Private Placement,

19  Request for Judicial Notice ("RJN"), at Exh. 1. During the same period, Capitol also

20  solicited investors for First California Northern ("NCB Holdings"), a holding company whose

21  purpose was to control Capitol's stake in NCB.  Capitol owned 51% of NCB Holdings

22  through an intermediate subsidiary.  In turn, NCB Holdings owned 51% of NCB.

23      NCB began operations in March 2004, and became and remains one of the most

24  successful Capitol-affiliated community banks.  Throughout its existence, Capitol has

25  remained the controlling shareholder of NCB and NCB Holdings.

26      Thereafter, in May 2004, Capitol offered to NCB Holdings' minority shareholders to

27  exchange shares of Capitol for those of NCB Holdings at a ratio that translated to 167% of

28  the book value of the common stock of NCB Holdings  (not the exchange that is the

2

1  subject of the instant lawsuit) . *See* Suppl RJN, Exhs. 15.  That exchange offer was

2  accompanied by a fairness opinion from JMP Financial ("JMP"), a Michigan-based firm.

3  *See id.* at Exh. 16.

4      In early 2005, certain NCB minority shareholders formed a minority shareholders

5  committee ("MSC") based on their concerns regarding Capitol's influence over NCB and its

6  intent to acquire ownership of NCB.  In April 2005, Capitol filed its registration statement

7  with the Securities and Exchange Commission ("SEC") in connection with its offer to

8  exchange shares of Capitol, which is publicly traded, for NCB minority shareholders' shares

9  in NCB, RJN at Exh. 2, which it amended in May 2005.  RJN, Exh. 3.  Capitol sent NCB

10 shareholders the exchange offer itself on June 2, 2005.  RJN, Exhs. 4 & 5.  The exchange

11 offer, which expired on June 30, 2005, was accompanied by two financial fairness opinions.

12 One was from JMP (the same entity that provided an opinion in connection with the 2004

13 NCB Holdings share exchange); and another was provided by Howe Barnes Investments,

14 Inc. ("Howe").  RJN, Exh. 4 at 290-296.

15      Capitol offered to exchange shares of NCB common stock for shares of Capitol

16 stock, at a ratio equal to approximately 150% of the book value of NCB's common stock.

17  *Id.*[1]  Capitol represented that the book value of NCB stock was approximately $10.60 per

18 share.  Therefore, Capitol was to issue approximately $15.90 worth of Capitol shares for

19 each NCB share tendered, or, in other words, approximately 0.49 Capitol shares for each

20 NCB share.

21      The MSC obtained its own fairness opinions regarding the exchange offer from The

22 Findley Group ("Findley") and Hoefer & Arnett, Inc. ("Hoefer").  Those opinions stated that

23 the *fair market value* of the NCB shares was approximately $21/share.  The MSC allegedly

24 gave the opinions to Capitol.  Subsequently, the MSC called for a shareholder meeting to

25 discuss Capitol's offer, but no meeting was held.  On June 27, 2005, certain MSC members

26 filed a lawsuit with this court (05-2601 PJH) to block the exchange.  That lawsuit was

27 subsequently dismissed.

28 _____

[1] Capitol notes that by swapping NCB shares for Capitol stock, NCB shareholders were also gaining liquidity since Capitol is traded on the NYSE and NCB is not.

The exchange offer closed on June 30, 2005, with Capitol owning approximately 87% of NCB.  There does not appear to be any dispute that the NCB shareholders who tendered their NCB shares received a 35% increase on the Capitol shares received in exchange.

In their complaint, plaintiffs allege that Capitol engaged in a concerted scheme to lower the value of NCB stock through its control of NCB.  They claim that NCB, despite its separate corporate existence, remained affiliated with Capitol, and that NCB purchased administrative services from Capitol.  The plaintiffs allege that Capitol lowered the value of NCB stock by charging NCB unfair and unreasonable fees for these services.  The crux of plaintiffs' case appears to be that, through its control of NCB, Capitol intentionally deflated the *book value* of NCB stock prior to the exchange.  They contend that the book value, which was estimated at $10.60/share at the time of the exchange, should have been much higher than what it was.  In support, they cite to findings contained in the MSC fairness opinions that the *fair market value* of the NCB shares at that time was approximately $21/share, and to the 167% share exchange ratio involved in the 2004 share exchange of NCB Holdings.

The plaintiffs allege that when Capitol made its tender offer, it under-valued the NCB stock.  According to the plaintiffs, Capitol, not NCB, hired the experts who determined NCB's value, which resulted in NCB's stock being under-valued.  In addition, the plaintiffs allege that Capitol improperly diluted the minority shareholder's influence over NCB, with the goal of encouraging acceptance of the tender offer.

Plaintiffs allege that Capitol was able to purchase the NCB stock at a price substantially below the fair market value as a direct result of misrepresentations and omissions of material fact made by defendants in the registration statement and share exchange offer.  They contend that these misrepresentations and omissions materially affected plaintiffs' decisions to exchange their NCB stock for Capitol stock.

**DISCUSSION**

A.      Legal Standards

1.      Federal Rule of Civil Procedure 12(b)(6)

A court should dismiss under Rule12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Williamson v. Gen'l Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

Review is generally limited to the contents of the complaint.  *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  However, material that is properly presented to the court as part of the complaint may be considered as part of a motion to dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim.  *Id.*  In addition, whether requested or not, the court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.  *See* Fed.R.Evid. 201; *see also In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (SEC filings); *Bryant v. Avedo Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (same); *Ravens v. Iftikar*, 174 F.R.D. 651, 660 (N.D. Cal. 1997) (closing stock prices).

2.      Federal Rule of Civil Procedure 9(b)

Generally, plaintiffs in federal court are required to give a short, plain statement of the claim sufficient to put the defendants on notice.  Fed. R. Civ. P. 8.  In actions alleging fraud, however, "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), the complaint must allege specific

facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. *See In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994). Because the plaintiff must set forth what is false or misleading about a particular statement, he must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. *Yourish v. California Amplifier*, 191 F.3d 983, 992-93 (9th Cir. 1999).

         3.      Claims under the 1934 Act

Section 10(b) of the Securities Exchange Act of 1934 provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To plead securities fraud under Section 10(b) of the 1934 Act or Rule 10b-5, plaintiffs must allege (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiffs relied (5) which proximately caused the plaintiffs' injury. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002). A presumption of reliance is available to plaintiffs alleging violations of § 10(b) based primarily on omissions of material fact, but not in cases alleging significant

 misrepresentations in addition to omissions, or alleging only misrepresentations. *Id.* at

1    1063-64.  A presumption of reliance is also available in a "fraud on the market" case,

2    where the plaintiff alleges that a defendant made material representations or omissions

3    concerning a security that is actively traded in an "efficient market."  *Id.* at 1064 (citing

4    *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988)).

5         Section 14(e) regulates tender offers.  It is entitled "Untrue statement of material fact

6    or omission of fact with respect to tender offer" and provides:

7            It shall be unlawful for any person to make any untrue statement of a material
             fact or omit to state any material fact necessary in order to make the
8            statements made, in the light of the circumstances under which they are
             made, not misleading, or to engage in any fraudulent, deceptive, or
9            manipulative acts or practices, in connection with any tender offer or request
             or invitation for tenders, or any solicitation of security holders in opposition to
10           or in favor of any such offer, request, or invitation.

11   15 U.S.C. § 78n(e).  In order to state a claim for a violation of section 14(e), the plaintiff

12   must allege that: (1) the defendant made misstatements or omissions of material facts; (2)

13   in connection with a tender offer. *Church v. Consolidated Freightways, Inc.*, 1991 WL

14   284083 (N.D. Cal. 1991).

15        While other circuits require that plaintiffs must also prove reliance and causation in

16   connection with a section 14(e) claim, the Ninth Circuit does not appear to require either.

17   *See Plaine v. McCabe*, 797 F.2d 713, 721 (9th Cir. 1986)*; Kahn v. Lynden*, 705 F.Supp.

18   1458, 1463-64 (W.D. Wash. 1989).  In *Plaine,* the Ninth Circuit held that the plaintiff need

19   *not* prove causation separately with respect to a section 14(e) claim.  Instead, "the plaintiff

20   succeeds in proving causation once the misstatement or omission has been shown to be

21   material."  797 F.2d at 721.  Additionally, contrary to other district courts, at least two

22   district courts in the Ninth Circuit have held that based on the Ninth Circuit's decision in

23   *Plaine*, plaintiffs need not prove reliance in connection with 14(e).  *Church*, 1991 WL

24   284083 at *9 ("reliance is not an 'essential element' of a claim under section 14(e). . .;

25   rather the true element is the making of the misrepresentation and omission, and from that

26   causation is presumed once the plaintiff demonstrates that such misrepresentation or

27   omission is material"); *Kahn*, 705 F.Supp. at 1463-64 (same).

28        Under § 20(a) of the 1934 Act, joint and several liability can be imposed on persons

1   who directly or indirectly control a violator of the securities laws. 15 U.S.C. § 78t(a).

2   Violation of § 20(a) is predicated on a primary violation under the 1934 Act.   *Heliotrope*

3   *Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 2000).  Plaintiffs alleging a claim

4   that individual defendants are "controlling persons" of a company must allege: 1) that the

5   individual defendants had the power to control or influence the company, 2) that the

6   individual defendants were culpable participants in the company's alleged illegal activity,

7   and 3) that the company violated the federal securities laws. *Durham v. Kelly*, 810 F.2d

8   1500, 1503-04 (9th Cir. 1987); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065

9   (9th Cir. 2000).

10          4.      The Private Securities Litigation Reform Act

11          The Private Securities Litigation Reform Act ("PSLRA") was enacted by Congress in

12   1995 to establish uniform and stringent pleading requirements for securities fraud actions,

13   and "to put an end to the practice of pleading 'fraud by hindsight.'"  *In re Silicon Graphics*,

14   183 F.3d at 958. The PSLRA heightened the pleading requirements in private securities

15   fraud litigation by requiring that the complaint plead both falsity and scienter with

16   particularity.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002).  If the

17   complaint does not satisfy these pleading requirements, the court, upon motion of the

18   defendant, must dismiss the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

19          Under the PSLRA – whether alleging that a defendant "made an untrue statement of

20   a material fact" or alleging that a defendant "omitted to state a material fact necessary in

21   order to make the statements made, in the light of the circumstances in which they were

22   made, not misleading" – the complaint must now specify each statement alleged to have

23   been false or misleading, specify the reason or reasons why each such statement is

24   misleading, and, if an allegation regarding the statement or omission is made on

25   information and belief, state with particularity all facts on which that belief is formed. 15

26   U.S.C. § 78u-4(b)(1).  If the challenged statement is not false or misleading, it does not

27   become actionable merely because it is incomplete.  *In re Vantive*, 283 F.3d at 1085; *Brody*

28   *v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

1    In addition – whether alleging that a defendant "made an untrue statement of

2    material fact" or alleging that a defendant "omitted to state a material fact" – the complaint

3    must now, with respect to each alleged act or omission, "state with particularity facts giving

4    rise to a strong inference that the defendant acted with the required state of mind."  15

5    U.S.C. § 78u-4(b)(2); *see also In re Vantive*, 283 F.3d at 1084.  By requiring particularized,

6    detailed allegations showing a strong inference of scienter, the PSLRA was intended to

7    "eliminate abusive and opportunistic securities litigation."  *Gompper v. VISX, Inc.*, 298 F.3d

8    893, 897 (9th Cir.2002).

9    In the Ninth Circuit, the required state of mind is "deliberate or conscious

10   recklessness."  *In re Silicon Graphics*, 183 F.3d at 979.  If the challenged act is a

11   forward-looking statement, the required state of mind is "actual knowledge . . . that the

12   statement was false or misleading."  15 U.S.C. § 78u-5(c)(1); *see No. 84*

13   *Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Co.*, 320

14   F.3d 920, 931 (9th Cir. 2003).  Because falsity and scienter in securities fraud cases are

15   generally strongly inferred from the same set of facts, the Ninth Circuit has incorporated the

16   falsity and scienter requirements into a single inquiry.  *Id.* at 932.  While the court must take

17   the totality of the allegations into account when considering whether the heightened

18   pleading standard has been met, *see America West,* 320 F.3d at 945, the complaint must

19   continue to comply with the *Silicon Graphics* standards in order to state a claim.  *In re*

20   *Read-Rite*, 335 F.3d at 846.

21   On a Rule 12(b)(6) motion to dismiss a complaint brought under the PSLRA, when

22   considering whether plaintiffs have shown a strong inference of scienter, "the district court

23   must consider all reasonable inferences to be drawn from the allegations, including

24   inferences unfavorable to the plaintiffs."  *Gompper*, 298 F.3d at 897 (noting the "inevitable

25   tension . . . between the customary latitude granted the plaintiff on a [12(b)(6) ] motion to

26   dismiss . . . and the heightened pleading standard set forth under the PSLRA").  In other

27   words, the court must consider all the allegations in their entirety in concluding whether, on

28   balance, the complaint gives rise to the requisite inference of scienter.  *Id.*

1          5.      Claims under the 1933 Act

2          Pursuant to the PSLRA, plaintiffs must plead both falsity and scienter with a

3  heightened degree of particularity to state a claim for a violation of section 10(b) of the

4  1934 Act.  *In re Read-Rite Corp.*, 335 F.3d 843, 846 (9th Cir. 2003) (citations omitted).  In

5  contrast, the 1933 Act bars the inclusion of false statements in any initial registration

6  statements filed with the SEC, before the securities are sold to the public.  15 U.S.C. §

7  77(k).  Under this Act, plaintiffs need only show that false statements were made, and are

8  not required to demonstrate that the statements were made with scienter.  In other words,

9  the heightened pleading requirements of the PSLRA do not apply to these particular 1933

10  Act claims.  *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002).  However, if

11  the 1933 Act claims sound in fraud, the pleading must comply with Fed. R. Civ. P. 9.  *Id.*

12  This requires heightened pleading as well, but requires only that "the circumstances

13  constituting fraud or mistake . . . be stated with particularity.  Malice, intent, knowledge, and

14  other condition of mind of a person may be averred generally."  *Id.* (quoting Fed. R. Civ. P.

15  9(b)).

16          Under § 11(a) of the 1933 Securities Act, any purchaser of a security covered by a

17  registration statement may sue based on material omissions or misrepresentations in that

18  statement.  15 U.S.C. § 77k(a).  Persons liable under § 11(a) are those who signed the

19  registration statement, directors of or partners in the issuer, professionals who participated

20  in the preparation of the registration statement, and underwriters of the security.  *Id.*  To

21  plead a § 11(a) claim, a plaintiff must allege that the registration statement contained an

22  omission or misrepresentation, and that the omission or misrepresentation was material –

23  that is, that it would have misled a reasonable investor about the nature of his or her

24  investment.  *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1996).

25          Section 15(a) imposes joint and several liability upon every person who controls

26  any person liable under § 11 or § 12.  15 U.S.C. § 77o.  Thus, violation of § 15(a) is

27  predicated upon violation of § 11 or § 12.  To state a claim for control person liability under

28  § 15(a), a plaintiff must allege that the individual defendants had the power to control or

1    influence the company, and that the individual defendants were culpable participants in the

2    company's alleged illegal activity.  *Durham*, 810 F.2d at 1503.

3    B.    Defendants' Motion

4          1.    Claim One:   False and Misleading Statements in Registration Statement

5          Plaintiffs claim that the registration statement contained untrue statements of

6    material facts and omitted certain material facts.  They have not set forth any allegations

7    specifically with respect to the registration statement, but instead incorporate the general

8    factual allegations they have set forth initially in their complaint.

9          Capitol makes three arguments in support of dismissal of the first claim: (1) Rule

10   9(b) applies to the section 11 claim because it sounds in fraud; (2) the claim does not

11   allege a true material misrepresentation; and (3) the claim does not allege section 11

12   damages.

13             a.    Whether Rule 9(b) Applies to the Section 11 claim because it Sounds
                     in Fraud
14

15         Capitol argues that Rule 9(b) applies to this claim because the complaint's

16   allegations are "predicated on fraud."  *See In re Leadis Tech., Inc. Sec. Litig.*, 2006 WL

     496039 at *3 (N.D. Cal. 2006); *In re Stac*, 89 F.3d at 1404-05; *In re Daou Systems, Inc.*,
17
     411 F.3d 1006, 1027 (9th Cir. 2005).
18
           In support of its arguments regarding the applicability of Rule 9(b), Capitol notes that
19
     plaintiffs' complaint utilizes the same alleged misrepresentations and omissions in support
20
     of their section 11 claim as those used to support their section 10(b) and 14(e) claims.  It
21
     argues that the allegations regarding collusion, violations of law, and knowingly false
22
     statements "is the stuff of a 'quintessential fraud claim.'"
23
           Therefore, Capitol contends that all elements of the section 11 claim must be stated
24
     with particularity, including the time, date, place, content of the alleged fraudulent
25
     representation, and how and why the representation was false or misleading.  Based on
26
     *Dauo*, Capitol asserts that the complaint must allege with particularity: (1) that the
27
     registration statement contained an omission or misrepresentation; and (2) that the
28
     omission or misrepresentation was material, that is, it would have misled a reasonable

1  investor about the nature of his investment.  411 F.3d at 1027.  Alternatively, even if Rule

2  9(b) does not apply, Capitol argues that the complaint still lacks the factual allegations

3  necessary to demonstrate contemporaneous existence, duty, and materiality.  *See In re*

4  *SeaChange Int'l Inc.,* 2004 WL 240317, at *9 (D. Mass. 2004).

5       In opposition, plaintiffs argue that pursuant to the Ninth Circuit's holding in *Dauo,* the

6  heightened pleading standards of Rule 9(b) apply only if the plaintiff: (1) alleges a "unified

7  course of fraudulent conduct;" and (2) the plaintiff relies entirely upon that course of

8  conduct as the basis of the claim.  *See Dauo*, 411 F.3d at 1027.  Plaintiffs then assert that

9  "[i]n cases where the section 11 claim is not based entirely upon a fraudulent course of

10  conduct, only those allegations regarding fraud must be stated with more particularity, and

11  then only under rule 9(b)."

12       Plaintiffs contend that the complaint does not sound entirely in fraud, and therefore

13  is not subject to Rule 9(b).  They assert that Capitol misreads *Dauo*, and that it is irrelevant

14  that the complaint contains fraudulent or otherwise intent-based omissions and

15  misrepresentations.  According to plaintiffs, the entirety of the factual allegations must be

16  based on fraud in order for Rule 9(b) to apply.

17       In reply, Capitol reiterates many of the same arguments that it made in its opening

18  papers.  It asserts that the section 11 claim is *not* based on negligence, but instead on

19  allegations of a fraudulent "scheme" premised on knowing misstatements and omissions.  It

20  contends that the absence of words explicitly pleading fraud is irrelevant - but that the issue

21  is instead whether the allegations are "predicated on fraud."  *See In re Leadis*, 2006 WL

22  496039 at *3.

23       Additionally, Capitol argues that plaintiffs are the ones who have misread *Daou,* and

24  notes that in that case, the Ninth Circuit held that "Rule 9(b) may prove fatal to 1933

25  Securities Act claims grounded in fraud when the complaint makes a 'wholesale adoption'

26  of the securities fraud allegations for purposes of the Securities Act claims."  411

27   F.3d at 1028.  It argues that is what plaintiffs have done in this case, and that their "alleged

28  material misrepresentations and omissions must have been based on fraud because

1    plaintiffs claim that defendants engaged in a 'clear scheme' to get plaintiffs' share of NCB

2    stock at low value."

3               b.    Whether Claim One Alleges Material Misrepresentations and/or
                     Omissions with Particularity
4
5          Capitol focuses on five of plaintiffs' related allegations concerning: (1) the "true

6    value" of NCB stock; (2) the minority shareholders committee's fairness opinion; (3)

7    Capitol's fairness opinions; (4) the services provided by Capitol to NCB; and (5) other

8    alleged misrepresentations.

9               i.    "True Value" Allegations

10         As for the "true value" allegations, Capitol argues that these fail as a matter of law

11   because the securities statutes are disclosure statutes – not "fair value" statutes.  *See*

12   *Shearson v. McMahon*, 482 U.S. 220, 252 (1987).

13         In opposition, plaintiffs assert that Capitol's statements regarding the value of NCB

14   stock must be fair and accurate, and contend that they were not.  Plaintiffs assert that the

15   complaint alleges that Capitol withheld material information about the true value of the NCB

16   stock from the offer documents, and that it therefore states a sufficient claim for a section

17   11 violation.  Plaintiffs further argue that the merits of the exchange ratio are not at issue in

18   this claim, but that instead the issue is the *fact* that the book values differed.

19         Capitol replies that plaintiffs have overstated its obligations under the 1933 Act

20   because defendants had no obligation to state that the offering price was below the "true

21   value" of the NCB common stock.  *See Billard v. Rockwell Intern. Corp.*, 526 F.Supp. 218,

22   221 (D.C.N.Y. 1981); *Wardrop v. Amway Asia Pacific*, 2001 WL 274067 at *4 (S.D.N.Y.

23   2001).  Capitol further asserts that it did indeed provide adequate disclosure about the

24   "fairness" of the price offered for NCB stock, citing to the Exchange Offer, which provides

25   that "Capitol's determination of the share value of NCB, for purposes of the proposed

26   exchange offer, is solely based on its arbitrary valuation as offered by Capitol."

27   RJN, Exh. 4, at 280.

28

1

2

ii.    Minority Shareholders Committee's Fairness Opinion
Allegations

3

As for the MSC's fairness opinion allegations, Capitol argues that the allegations are

4

inadequate because the complaint "provides no dates or other particulars, such as who

5

provided the fairness opinion to Capitol or who at Capitol received it."  *See In re Pacific*

6

*Gateway,* 169 F.Supp.2d , 1160, 1167 (N.D. Cal. 2001).  Capitol also argues that because

7

the committee itself put the fairness opinion information into the market, Capitol "cannot be

8

held liable for not disclosing it themselves."  *See Heliotrope*, 189 F.3d at 976-77.

9

Plaintiffs respond that this claim is different than that in *Pacific Gateway* because

10

that case involved section 10(b) claims that were clearly governed by Rule 9(b).  They

11

further argue that the MSC's disclosure of its own fairness opinion, contrary to

12

Capitol's argument otherwise, did not negate harm by the omission of the information from

13

the offer documents.  Again, plaintiffs note that the *Heliotrope* case cited by Capitol

14

involved 10(b) claims as opposed to section 11 claims.  Plaintiffs assert that the difference

15

is significant because unlike section 10(b) claims, plaintiffs do not have to plead causation

16

for section 11 claims.  *See In re Adams Golf,* 381 F.3d 267, 276-77 (3d Cir. 2004); *In re*

17

*Gap Stores,* 79 F.R.D. 283, 297 (N.D. Cal. 1978).  Moreover, plaintiffs contend that section

18

11 claims may include misrepresentation or omissions that become public through avenues

19

other than the offering document.

20

iii.    Capitol's Fairness Opinions

21

Regarding Capitol's fairness opinions, Capitol asserts that there are no facts

22

pleaded with particularity to support the allegations that the Exchange Offer did not

23

adequately disclose JMP's bias and lack of independence.  Capitol notes that the

24

Exchange Offer specifically disclosed that it retained JMP "as its financial advisor and

25

agent" and paid JMP a $9k fee.  *See* RJN, Exh. 4 at 257, 290, 293.  It also argues that

26

Howe's fairness opinion was "exemplary," and considered price models of banks inside and

27

outside California.  *Id.* at 318-19.

28

Plaintiffs respond that the pertinent allegations need not be pled with particularity.

However, they point to par. 31 of the complaint, asserting that it is sufficiently particular,

14

1  explaining that the fact that the fairness opinion prepared by JMP and incorporated in the

2  Exchange offer was drafted almost a year before the offer occurred demonstrates that

3  Capitol intended to use the JMP opinion to justify the exchange rate of 150% regardless of

4  whether the NCB stock bore a corresponding fair market value by the time the offer was

5  made.

6        Capitol replies that it was under no obligation to disclose the 2004 JMP fairness

7  opinion that had been prepared in connection with the 2004 NCB Holdings share

8  exchange.  Moreover, it notes that the JMP fairness opinion had been made public in SEC

9  filings.  *See* SRJN, Exh. 15 at 537-38; Exh. 16 at 649-50.  It asserts that anyone who

10  looked at the numbers, would have realized that the 2004 offer was for more than 150% of

11  book value, and that section 11 does not require the disclosure of information that is

12  already in the public record.  Capitol also argues that the omission of the JMP fairness

13  opinion was not material because it did not significantly alter the mix of material available.

14        Additionally, Capitol replies that its offer made adequate disclosures regarding both

15  the 2005 JMP and Howes fairness opinions in connection with the NCB share exchange

16  offer.  It further notes that the JMP fairness opinion was dated May 27, 2005, and was not

17  obsolete.  RJN, Exh. 4 at 312.

18                         iv.      Capitol's Services to NCB

19        Capitol also argues that the allegations that the Exchange Offer did not adequately

20  disclose the services provided by Capitol to NCB are false.  It cites to the relevant portions

21  of the Exchange Offer at RJN, Exh. 4 at 256, 344.  It further contends that plaintiffs'

22  conclusory allegation that the fees NCB paid for Capitol's services reduced its book value

23  are insufficient and immaterial.

24        In opposition, plaintiffs note that Capitol's Exchange Offer stated that it "provides

25  transactional, processing, and administrative support and mentoring to aid in the effective

26  growth and development of its banks" and "provides access to support services and

27  management with significant experience in community banking."  RJN, Exh. 4 at 256.

28  Plaintiffs characterize the disclosure as a simple "mission statement" that they assert fell

1   short of providing adequate disclosure since a reader would be unable to make an

2   intelligent assessment based on the disclosure as to whether the amounts charged by

3   Capitol were warranted.  Furthermore, plaintiffs argue that they need not plead the effect of

4   undisclosed fees upon the profitability or book value of NCB because those matters relate

5   to causation, which does not need to be pled in a section 11 claim.

6   In reply, Capitol challenges plaintiffs' characterization of its disclosures as general,

7   noting that they were detailed enough to provide the dollar amount of NCB's fees for

8   Capitol's services. *See* RJN, Exh. 4 at 344.  Moreover, Capitol argues that "[a]bsent

9   allegations of the extent to which the fees were excessive, there is no basis to infer that the

10  fees were excessive, much less that any excess was material."

11                          v.      Other Miscellaneous Allegations

12  Finally, Capitol contends that other miscellaneous allegations of plaintiffs which post-

13  date the June 2, 2002 effective date of the exchange offer are not actionable.  *See* 15

14  U.S.C. § 77(k); *In re Gap*, 79 F.R.D. at 297.  Capitol also argues that plaintiffs have not

15  pled sufficient facts showing that the exchange offer falsely stated that NCB's board of

16  directors had not solicited or received other exchange proposals.  *See Yourish*, 191 F.3d at

17  993.  Additionally, Capitol makes similar arguments with respect to plaintiffs' allegation that

18  the exchange offer falsely stated that no one was authorized to provide information other

19  than that contained in the offer.  Capitol asserts that the complaint lacks particularity

20  regarding "the who, what, when and where," and also does not show that any alleged

21  misrepresentation was material or caused investors to take action that they would not

22  otherwise have taken.

23  Plaintiffs respond that Capitol is incorrect regarding the timing issue because

24  whether Capitol knew of the false nature of a statement in the offer documents is irrelevant

25  because negligent and innocent misrepresentations are actionable under section

26  11. *See Adams Golf*, 381 F.3d at 274 n. 7.  As for Capitol's other arguments, plaintiffs

27  assert that they ask the court to impose a requirement that plaintiffs plead causation and

28  reliance, which they are not required to do with a section 11 claim.  *See Gap*, 79 F.R.D. at

297.

In reply, Capitol clarifies that it has *not* argued that scienter must be established for a section 11 claim.  Instead, it asserts the issue is whether the alleged statements were made before or after the Exchange Offer's effective date.  It contends that any statements allegedly made after the effective date may provide a basis for other claims, but not under section 11.

c.     Whether Section 11 Damages Must be Alleged

Capitol argues that the complaint does not contain allegations that plaintiffs have suffered section 11 damages.  It asserts that plaintiffs cannot raise a section 11 claim "unless Capitol stock now trades for less than the price plaintiffs paid for."  *See* 15 U.S.C. § 77(k)(e); *Metz v. United Counties Bancorp*, 61 F.Supp. 2d 364, 378 (D.N.J. 1999).  In fact, Capitol notes that plaintiffs' stock has progressively increased in value from the time they got the stock until the time they sued and from the time they sued until today.  *See* RJN, Exh. 13 at 473-477.

Plaintiffs respond that they are not required to plead loss causation with respect to a section 11 claim.  They contend that the fact that NCB stock may have risen in price since plaintiffs received it through the exchange does not negate plaintiffs' damages.  Instead, the "gravamen of this action is that plaintiffs did not realize *as much* benefit from the exchange as they might have done if the Exchange Offer had disclosed all material facts."

In reply, Capitol asserts that the plaintiffs' failure to allege loss causation is an affirmative defense to a section 11 claim, and may be raised in a motion to dismiss when the problem is apparent on the face of the complaint.  *See Jablon v. Dean Witter*, 614 F.2d 677, 682 (9th Cir. 1980).  It also notes that the value of plaintiffs' shares has increased more than 35% since they received their stock.  RJN, Exh. 13 at 473-77.

d.     Analysis

Unlike section 10(b), "[n]o scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions."  *See In re Dauo*, 411 F.3d at 1027.  However, "[a]lthough section 11 does not require a plaintiff to allege or

1   prove fraud," a plaintiff will nevertheless be subject to Rule 9(b)'s heightened pleading

2   standard if the complaint "sounds in fraud."  *Id.*  The Ninth Circuit has held that a complaint

3   "sounds in fraud" if the plaintiff alleges "a unified course of conduct and rel[ies] entirely on

4   that course of conduct as the basis of a claim."  *Id.*

5        "[W]here fraud is not an essential element of a claim, only allegations of fraudulent

6   conduct must satisfy the heightened pleading requirements of Rule 9(b)."  *Id.*  "Allegations

7   of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule

8   8(a)."  *Id.*  "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district

9   court should disregard those averments or strip them from the claim."  *Id.* at 1028.  "The

10  court should then examine the allegations that remain to determine whether they state a

11  claim."  *Id.*

12       However, the court "need not rewrite a deficient complaint."  *Id.*  Where the

13  complaint "makes a *wholesale adoption* of the securities fraud allegations for purposes of

14  the [1933 § 11] claim[]," the Ninth Circuit has held that the

15       district court is not required to sift through allegations of fraud in search of
         some 'lesser included' claim of strict liability.  It may dismiss.  If it does so, it
16       should ordinarily accept a proffered amendment that either pleads with the
         requisite particularity or drops the defective allegations and still states a claim.

17  *Id.*

18       Here, the court finds that plaintiffs' complaint "sounds in fraud."  Factually, this case

19  is very similar to *Dauo*.  Like *Dauo*, the plaintiffs have alleged a fraudulent scheme; and,

20  like *Daou,* plaintiffs' complaint "fully incorporates all allegations previously averred in the

21  complaint for purposes of all their claims."  *Id.*  Additionally, like *Dauo*, plaintiffs' section 11

22  claim "makes a 'wholesale adoption' of the securities fraud allegations for purposes of the

23  [1933] Securities Act claims."  *Id.*

24       Therefore, to survive dismissal, plaintiffs must demonstrate *with particularity* in

25  accordance with Rule 9(b) that: (1) the registration statement contained an omission or

26  misrepresentation; and (2) and that the omission or misrepresentation was material – that

27  is, that it would have misled a reasonable investor about the nature of his or her

28

investment.  *In re Stac,* 89 F.3d at 1403-04.

1    Here, the court finds that plaintiffs have not alleged specific facts regarding the

2    fraudulent activity in connection with the registration statement.  *See In re Stac*, 89 F.3d at

3    1405 (scope of liability under section 11 applies to misstatements contained in

4    prospectuses or registration statements); *see also In re Silicon Storage Technology*, 2006

5    WL 648683 at *3 (N.D. Cal. 2006) (noting that "[u]nder Rule 9(b), the complaint must allege

6    specific facts regarding the fraudulent activity, such as the time, date, place, and content of

7    the alleged fraudulent misrepresentation, how or why the representation was false or

8    misleading, and in some cases, the identity of the person engaged in the fraud").  All of the

9    allegations associated with this claim have been incorporated wholesale from the general

10   factual background of the complaint.

11   With respect to the "true value" allegations, plaintiffs have failed to plead facts with

12   particularity that defendants had a duty to disclose the information they claim should have

13   been disclosed.  Plaintiffs have not identified any SEC regulation or other legal authority

14   that required defendant to disclose that information.  Regarding the MSC fairness opinions

15   allegations, this court may take judicial notice of the fact that the opinions were within the

16   public market at RJN, Exh. 11 at 372, 383.  The Ninth Circuit spoke to this very issue in

17   *Heliotrope*, 189 F.3d at 981 n.18, holding that in consideration of a motion for judgment on

18   the pleadings, it could "take judicial notice that the market was aware of the information

19   contained in news articles submitted by the defendants."  *Id.* (citing Fed.R.Evid. 201; *Basic*

20   *Inc.*, 485 U.S. at 244-47).  The *Heliotrope* court granted judgment on the pleadings on

21   plaintiffs' section 10(b) & 10b-5 claim where "the record show[ed] that the market was

22   aware" of the very information that plaintiffs asserted defendants in that case failed to

23   disclose.  189 F.3d at 180-81.

24   Although *Heliotrope* involved a section 10(b) claim that required proof of

25   causation, unlike a section 11 claim, persuasive authority exists extending the Ninth

26   Circuit's holding in *Heliotrope* to section 11 claims.  In *In re Merrill Lynch*, the district court

27   held that the defendants could "not be held liable [under section 11] for failing to disclose

28   that [it] provided investment banking services to companies in the Fund's portfolio if the

information was already public."  272 F.Supp.2d 243, 249-50 (S.D.N.Y. 2003).  It noted that

1  "[s]ection[] 11 do[es] not require the disclosure of publicly available information."  *Id.* (citing

2  three circuit cases in support including cases from the Third, Seventh, and Second

3  Circuits).

4         Alternatively, even if this court did not dismiss the portion of the claim based on the

5  MSC fairness opinions because of their public nature, as with the above allegations,

6  plaintiffs are still required under Rule 9(b) to plead this claim with particularity, including

7  providing dates and particulars regarding which defendants were aware of the MSC's

8  fairness opinions and when they were received.  Plaintiffs should also identify the SEC

9  regulation or other legal authority that required defendant to disclose that information.

10         Regarding Capitol's own fairness opinions, although plaintiffs' complaint sufficiently

11  explains their basis for claiming that JMP's 2005 opinion was biased and inaccurate, again,

12  they still have not identified with particularity the SEC regulation or other legal authority that

13  required defendant to disclose that information.  Additionally, they have *not* explained with

14  particularity the specific defects they claim are associated with the Howe opinion or the

15  pertinent legal authority pertaining to the alleged defects or requiring disclosure.

16         As for the allegations concerning the services that Capitol provided NCB,

17  review of the exchange offer suggests that Capitol did in fact sufficiently disclose

18  information regarding its services to NCB.  Plaintiffs need to explain with particularity how

19  this disclosure is inadequate.

20         Finally, *none* of the miscellaneous allegations addressed by the parties contain the

21  time, date, place, and content of the alleged fraudulent misrepresentation, or how or why

22  the representation was false or misleading.  *See In re Silicon Storage Technology*, 2006

23  WL 648683 at *3.

24         For these reasons, the court GRANTS Capitol's motion to dismiss plaintiffs' section

25  11 claim.

26

27

28         2.      Claims Three and Five: False and Misleading Statements in Violation of Rule
                   10(b) and Rule 10b-5 and § 14(e) of the Exchange Act

1    Plaintiffs incorporate the general allegations of their complaint with respect to claims

2    three and five as well.  As for claim three, plaintiffs allege that Capitol "carried out a plan,

3    scheme and course of conduct which was intended to . . . and did deceive plaintiffs and

4    other class members. . . to exchange shares of NCB for shares of Capitol stock at less

5    than fair value."  Plaintiffs assert that defendants did so by (a) employing devices,

6    schemes, and artifices to defraud; (b) making untrue statements of material facts and/or

7    omitting material facts necessary to make the statements not misleading; and (c) engaging

8    in acts, practices, and a course of business which operated as a fraud and deceit . . . in an

9    effort to enrich themselves.   Plaintiffs further allege that defendants committed the above

10    acts to "unlawfully manipulate and profit from the Share Exchange Offer."  They allege that

11    defendants "had actual knowledge of the misrepresentations and omissions of material

12    facts . . . or acted with reckless disregard for the truth in that they failed to ascertain and to

13    disclose such facts, even though such facts were available to them."

14    Regarding claim five, the section 14(e) claim, plaintiffs again incorporate the same

15    general allegations, and also allege that "[t]he tender offer was conveyed to members of

16    the plaintiff class by use of a written offering that contained unture statements of material

17    facts and omitted to state material facts . . . required or necessary to make the statements .

18    . . not misleading."

19    Capitol makes two primary arguments with respect to claims three and five: (1) that

20    they do not adequately allege falsity; and (2) that they do not raise a strong inference of

21    scienter.

22    Both parties agree that both claims are governed by the PSLRA.

23          a.    Falsity

24    With respect to both claims, Capitol notes essentially four groups of plaintiffs'

25    allegations that it alleges are all insufficiently particular regarding falsity, including: the (1)

26    fairness of the exchange offer; (2) alleged collusion between Capitol and the NCB board;

27    (3) ability to accept the exchange offer via fax; and (4) Reid's exercise of options.

28

1    In response, plaintiffs assert that the court must consider all the factual allegations

2  pertinent to their 10(b) claim, and that contrary to Capitol's approach, finding fault with a

3  few select allegations will not require dismissal.

4    In reply, Capitol argues that plaintiffs have misstated their pleading requirements,

5  and that under the PSLRA and Rule 9(b), plaintiffs must state their fraud claims with

6  particularity, including the time, date, place and content of the alleged fraudulent statement,

7  and how and why the statement was false or misleading.  *See Stac*, 89 F.3d at 1405;

8  *Silicon Storage*, 2006 WL 748683 at *3.

9                    i.    Fairness of the Exchange Offer

10    Specifically, as for the fairness of the exchange offer, Capitol argues that it provided

11  full disclosure which was not false.   It asserts that the offer spoke not of an agreement or a

12  commitment to make an exchange offer to NCB's minority shareholders at a price equal to

13  150% of NCB's adjusted book value, but instead its hope that that would occur.

14  Additionally, Capitol asserts that it did not promise a "fair price" in the offer.

15    In response, plaintiffs contend that Capitol has missed the point, and that the "issue

16  is whether the characterization of the facts by the Exchange Offer was false or misleading

17  by reason of its incorporation of misstatements or omissions of material fact."  They assert

18  that when the exchange offer was declared effective, it did not disclose that Capitol had

19  previously fostered the impression that the plaintiffs' NCB shares would be purchased for

20  150% of their book value, and that that price would be fair.

21    In reply, Capitol asserts that plaintiffs have not explained who and to whom

22  defendants fostered the impression that the plaintiffs' NCB shares would be purchased for

23  150% of their book value, and that that price would be fair.  They argue that the claim is

24  therefore not sufficiently particular and that the court should not accept such "fact-bare"

25  conclusions.

26                    ii.   Collusion between Capitol and the NCB Board

27    Regarding the alleged collusion between Capitol and the NCB board, Capitol argues

28  that the complaint lacks specificity because "it provides no facts about which members of

1 | the NCB board were contacted, who contacted them, or when they were contacted."

2 |      Plaintiffs in opposition assert that they are not required to plead all of the information

3 | argued for by Capitol.  Citing *Pacific Gateway*, plaintiffs argue that all the PSLRA requires

4 | is that they allege what misleading statement was made and why it was misleading.  169

5 | F.Supp.2d at 1165.  They contend that "Capitol made the misleading statement that all of

6 | the NCB board members had rendered their shares."  According to plaintiffs, the statement

7 | was misleading because it created a false impression that the NCB board members

8 | thought favorably of the Exchange Offer.  They argue that it was false because at least one

9 | NCB board member had withdrawn his or her tender of shares.

10 |      In reply, Capitol argues that plaintiffs misinterpret *Pacific Gateway*, and that it is not

11 | enough to simply state what was misleading and why.

12 |                     iii.     Ability to Accept the Exchange Offer Via Fax

13 |      Capitol also contends that the complaint lacks specificity regarding the allegations

14 | that some person was told that a tender of shares could not be accomplished via fax.  It

15 | notes that plaintiffs have not named one affected shareholder, and that the issue clearly did

16 | not affect plaintiffs since they tendered their shares. Moreover, Capitol also argues that it is

17 | immaterial.

18 |      Plaintiffs, in opposition, assert that Capitol has misstated the pertinent allegations

19 | and that the complaint actually alleges that the exchange offer "falsely stated that faxed

20 | withdrawals of tenders would not be sufficient."  Plaintiffs assert that such a

21 | misrepresentation is material because if a class member decided to withdraw a tender of

22 | shares, the incorrect information may have prevented a hurdle to withdrawal.

23 |      Again, Capitol replies that plaintiffs' allegations are still factually insufficient because

24 | they do not specify which defendant made the statement, to whom the statement was

25 | made, or when or where, let alone any material consequences.

26 |                     iv.     Reid's Exercise of Options

27 |      Finally, with respect to its alleged failure to disclose Reid's exercise of options,

28 | Capitol argues that the complaint again lacks particularity regarding the number of options

1   Reid exercised, when he exercised them, and how the NCB stock value was diluted.

2   Moreover, it asserts that given plaintiffs' agreement that Capitol has always controlled NCB,

3   Reid's exercise of options was immaterial.

4          Plaintiffs respond that the allegations that Reid enjoyed accelerated vesting and

5   exercise of options in NCB stock, and that Capitol failed to disclose the information, is

6   sufficient to demonstrate both the misleading statement and the reason it was misleading.

7   Plaintiffs assert that a shareholder's true voting power and interest in the company are

8   always material.  *See Stuebler v. Xcelera.com*, 430 F.3d 503, 505-06 (1st Cir. 2005).

9          In reply, Capitol argues that the *Xcelera* case cited by plaintiffs is distinguishable

10  because the plaintiffs there demonstrated materiality, alleging that Xcelera risked diluting its

11  stock if it decided to issue the stock to satisfy its obligations to co-investors.  *Id.*

12                 b.    Section 14(e) Claim

13         Turning to plaintiffs' fifth claim under section 14(e), Capitol likewise argues that

14  plaintiffs have not stated an actionable claim because under 14(e), the allegation that

15  Capitol failed to disclose that the price offered for the NCB stock was below its "true value"

16  does not state a claim.  *See In re PHLCORP*, 700 F.Supp. 1265, 1269 (S.D.N.Y 1988);

17  *Wardrop*, 2001 WL 274067 at *4.  Plaintiffs respond that Capitol's failure to state a fair price

18  for NCB stock is not the only misrepresentation that supports the 14(e) claim.

19                 c.    Scienter

20         Capitol also argues that claims three and five do not sufficiently plead a strong

21  inference of scienter. *See Pacific Gateway*, 169 F.Supp.2d at 1167; *In re Vantive*, 283 F.3d

22  at 1085; *Silicon Graphics*, 183 F.3d at 974; *Gompper*, 298 F.3d at 897.  They assert that

23  the scienter allegations "boil down to one weak allegation of motive – that defendants made

24  misrepresentations because they wanted to buy NCB stock for less than fair market value."

25  Capitol contends that allegations of mere motive and opportunity are not sufficient – but

26  that "specific intentionally reckless acts" are required. *See Pacific Gateway*, 169 F.Supp.2d

27  at 1167; *In re Vantive*, 283 F.3d at 1085; *Silicon Graphics*, 183 F.3d at 974; *Dauo*, 411 F.3d

28  at 1022.

1    Plaintiffs, in response, agree that they are required to plead facts raising a "strong

2  inference" of deliberate or knowing conduct.  *See In re Silicon Graphics*, 183 F.3d at 974.

3  They assert that they have done so.  They further note that the court should look at the

4  complaint as a whole rather than in the piecemeal manner advocated by Capitol. *See*

5  *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).  Plaintiffs assert that the complaint

6  raises facts beyond mere motive and opportunity.  They contend that the allegations "raise

7  a strong inference that defendants wanted to conceal the higher previous fairness opinion

8  since the shareholders to whom the Exchange Offer was made might refuse to tender their

9  shares if they thought Capitol's appraiser would support a higher price as it had in the

10  past."  In particular, plaintiffs point to paragraphs 22, 23, 24, and 35 in arguing that "[t]hese

11  facts and others show a pattern from which it can logically be inferred that defendants were

12  attempting to manipulate the minority NCB shareholders into accepting the Exchange Offer

13  and tender their NCB shares to Capitol at below fair market price and without being able to

14  have a shareholders' vote on the terms of the tender offer."

15    Additionally, plaintiffs assert that although the heightened pleading requirements of

16  the PSLRA apply to a section 14(e) claim, the requisite state of mind is negligence, as

17  opposed to knowledge or deliberate recklessness.  *See Pacific Gateway*, 189 F.Supp.2d at

18  1166.

19    Capitol replies that plaintiffs' "facts" are just restatements of their argument and do

20  not raise a strong inference regarding scienter.  It notes that plaintiffs have not alleged that

21   Capitol prevented the NCB board from meeting; that Capitol had an obligation to conduct a

22  shareholder vote; that Capitol had promised a shareholder vote; that proceeding by

23  exchange offer was novel or improper; that a board meeting or a shareholder vote was

24  necessary or desirable in connection with the exchange offer.  It argues that plaintiffs'

25  personal preference for a shareholder vote does not constitute strong evidence of

26  deliberate recklessness or conscious misconduct on Capitol's part.  *See Silicon Graphics*,

27  183 F.3d at 974.

28    Capitol also replies that plaintiffs have miscited *Pacific Gateway* because that case

1   did not involve a section 14(e) claim.

2          d.   Analysis

3          The court's analysis is the same for both the Rule 10 and section 14 claims because

4   the falsity and scienter requirements are the same.  Although the PSLRA's heightened

5   pleading requirements apply to section 14(e), neither the Ninth Circuit nor district courts in

6   the Ninth Circuit appear to have addressed the issue of scienter required under section

7   14(e).  This court's decision cited by plaintiffs in support of a negligence standard, *Pacific*

8   *Gateway*, did not even involve a section 14(e) claim.

9          Even though the Ninth Circuit has not resolved the issue regarding the scienter

10  required under section 14(e), the majority of other circuits and districts to address the issue

11  have held that the scienter required under 14(e) is the same as that under Rule 10(b).  *See*

12  *In re Digital Island Sec. Litig.,* 357 F.3d 322, 328-31 (3rd Cir. 2004). *Adams v. Standard*

13  *Knitting Mills, Inc.*, 623 F.2d 422, 431 (6th Cir. 1980); *Sogevalor v. Penn Central Corp.*, 771

14  F.Supp. 890, 895 (S.D. Ohio 1991).

15         Recently, the Third Circuit in *In re Digital Island Sec. Litig.,* explained that "[s]ection

16  14(e) is modeled on the antifraud provisions of § 10(b) of the '34 Act and Rule 10b-5m,

17  which require proof of scienter." 357 F.3d at 328 (citing *Schreiber v. Burlington Northern*

18  *Inc.*, 472 U.S. 1, 10 (1985); and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)).

19  The *Digital Island* court noted that it had construed section 14(e) consistently with Rule

20  10b-5 in the past.  *Id.*  It "therefore join[ed] those circuits that hold that scienter is an

21  element of a section 14(e) claim."  *Id.*

22         The court finds the reasoning of those courts to be persuasive, and concludes that

23  plaintiffs are required to prove the same scienter under section 14(e) as Rule 10(b) and

24  10b-5.  Accordingly, plaintiffs are required to prove:  (1) the defendant made misstatements

25  or omissions of material facts; (2) with scienter; (3)  in connection with a tender offer.

26         "In considering whether a private securities fraud complaint can survive dismissal

27   under Rule 12(b)(6), [the court] must determine whether particular facts in the complaint,

28

    taken as a whole, raise a strong inference that defendants intentionally or with deliberate

1    recklessness made false or misleading statements."  *America West*, 320 F.3d at 932 (citing

2    *Ronconi*, 253 F.3d at 429, "noting that pleading requirements under PSLRA can be

3    collapsed into a single inquiry because analysis of both requirements involve the same set

4    of facts").  The court generally considers falsity and scienter at the same time.  *Id.*

5         Claims three and five suffer from the same lack of particularity as the section 11

6    claim discussed above.  Plaintiffs have not explained the who, what, where, when with

7    respect to either the falsity or the scienter requirements.  Accordingly, the court GRANTS

8    Capitol's motion to dismiss claims three and five.  If plaintiffs need guidance regarding the

9    types of particularized facts required regarding scienter and falsity, they should refer to this

10   court's recent decision in *In re Silicon Storage*, 2006 WL 648683 (N.D. Cal. 2006).

11        3.    Claims Two and Four: "Control Person" Claims Under § 15 of the Securities
              Act and § 20(a) of the Exchange Act

12        Capitol moves to dismiss on the basis that the claims do not state a "control person"

13   claim against Reid.  It argues that the claims must be dismissed for two reasons: (1)

14   because plaintiffs can not establish primary underlying violations of the 1933 and 1934

15   Acts; and (2) because the complaint does not allege particularized facts that Reid had the

16   power to control "the specific corporate policy which resulted in primary liability."  *See*

17   *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001).  It argues that the conclusory

18   allegation that Reid "had direct and supervisory involvement in the day-to-day operations of

19   Capitol" is insufficient, and that title or officer status does not give rise to a presumption of

20   control under either section 15 or 20(a).

21        In opposition, plaintiffs argue that whether one is a "control person" is too fact-

22   intensive to be decided on a motion to dismiss.  *See Howard v. Everex Systems, Inc.*, 228

23   F.3d 1057, 1065 (9th Cir. 2000).  Contrary to defendant's position, plaintiffs argue that Rule

24   9(b)'s heightened standard for a control person claim may be met "simply by alleging that

25   the control person was active in the daily affairs of the company or exercised specific

26   control over the preparation and release of the financial statements."  *See Howard v. Hui*, c

27   92-3742 CRB (N.D. Cal. Sept. 24, 2001); *In re Network Assoc.*, 2003 WL 24051280 at *8,

28   n. 18 (N.D. Cal. 2003).  Plaintiffs point to pars. 47, 61-62 in support of their argument that

1   they have alleged sufficient facts for the control person claims.  They note, contrary to

2   defendant's argument, that the fact that Reid signed the registration statement is also

3   sufficient.  *See In re Worldcom*, 294 F.Supp.2d 392, 419-20 (S.D.N.Y. 2003).

4        Adequate pleading of a primary violation of § 10(b) is required for a plaintiff to

5   adequately plead control liability under § 20(a).  *See* 15 U.S.C. § 78t.  Because the

6   complaint fails to state a claim for primary liability under § 10(b) or Rule 10b-5, the court

7   finds that the claim for control person liability must be dismissed.

8        4.     Whether Claims 6-8 are Preempted by SLUSA

9        Plaintiffs agree that the Supreme Court's recent decision in *Merrill Lynch v. Dabit*,

10  126 S.Ct 1503 (2006), makes it clear that the Securities Litigation Uniform Standards Act of

11  1998 (SLUSA) preempts their sixth through eighth claims.  Therefore, plaintiffs do not

12  oppose defendant's motion, and agree to a dismissal of those claims.

13       Accordingly, the court dismisses claims six, seven, and eight.

14                                **CONCLUSION**

15       Plaintiffs' claim one (section 11) is dismissed based on plaintiffs' failure to plead the

16  material misrepresentations and omissions with particularity pursuant to Rule 9(b).  Claims

17  three and five (rule 10(b) and section 14(e)) are dismissed for failure to plead falsity and

18  scienter with particularity pursuant to the PSLRA and Rule 9(b).  Claims two and four (§ 15

19  of the Securities Act and § 20(a) of the Exchange Act) are dismissed because the

20  complaint fails to state a claim for a primary violation.  State law claims 6-8 are dismissed

21  with prejudice as preempted by SLUSA pursuant to the Supreme Court's recent decision in

22  *Merrill Lynch v. Dabit*, 126 S.Ct 1503 (2006).

23       With the exception of state law claims 6-8, the motion to dismiss is GRANTED with

24  leave to amend.  Plaintiffs may file *one* amended complaint, encompassing both the 1934

25  Act claims and the 1933 Act claims, no later than 45 days after the filing of this order.

26  Defendants may file their response to the amended complaint 30 days thereafter.

27  ////

28

1    This order fully adjudicates the matters listed at no. 19 on the clerk's docket for this

2 case.

3    **IT IS SO ORDERED.**

4

5 Dated: June 16, 2006

6

7    _____

8    PHYLLIS J. HAMILTON
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28